UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE SATURNINO VELASQUEZ MEJIA, A-071-953-238,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, Warden of the California City Immigration Processing Center, et al.,<br>Respondents. | No. 1:26-cv-01958-DC-EFB<br><br>FINDINGS AND RECOMMENDATIONS (ECF Nos. 1, 9) |

Petitioner is a noncitizen alien detained in an immigration detention facility who has brought a petition for writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1. This matter has been referred to the undersigned pursuant to Local Rule 302(c)(17) and 28 U.S.C. § 636(b)(1)(B). Pending before the court is respondents' motion to dismiss certain respondents, ECF No. 9, and the petition, which is fully briefed. ECF Nos. 1, 7, 10. For the reasons set forth below, the undersigned recommends respondents' motion be granted and petitioner's petition be granted.

**BACKGROUND**

**A. Factual Background**

In his verified petition for writ of habeas corpus, petitioner alleges he is a citizen and national of El Salvador, who entered the United States in 1985, at age 18, fleeing political violence. ECF No. 1 ¶ 22. He was convicted of a drug offense in 1992 and removed to El

Salvador in 1993. *Id.* ¶ 24. He re-entered the United States in 1995. *Id.* ¶ 25. In 1997, he was charged with first-degree murder, for which he was later convicted and sentenced to an indeterminate term of thirty-five years to life. *Id.* ¶ 26. In 2009, while incarcerated, he dissociated from the gang with which he had been affiliated, MS-13. *Id.* ¶ 27. He pursued programming opportunities in prison and, in December 2022, he was found suitable for release by the California Board of Parole Hearings. *Id.* ¶¶ 28-29. Upon his release from prison, on May 23, 2023, he was taken into custody by Immigration and Customs Enforcement (ICE), and remains currently detained. *Id.* ¶¶ 13, 30, 31.

On June 15, 2023, an Immigration Judge found petitioner had a reasonable fear of persecution on a protected ground or torture if removed to El Salvador, and placed him in withholding-only proceedings. ECF No. 1 ¶ 33.

On November 28, 2023, petitioner had a bond hearing at which an Immigration Judge denied him bond. *Id.* ¶ 55. He appealed that denial to the BIA, which denied the appeal on March 15, 2024. *Id.* ¶ 56.[1]

From January through October 2024, petitioner had six calendar hearings on his fear-based claim for relief, at which evidence was taken. *Id.* ¶ 38. On May 20, 2025, the Immigration Judge issued a decision denying petitioner's claim for relief under the Convention Against Torture. *Id.* ¶ 44. Petitioner appealed the denial to the BIA, which the BIA denied on October 17, 2025. *Id.* ¶¶ 45-49. While the appeal was pending before the BIA, petitioner also sought review in the Court of Appeals, on July 25, 2025, and moved for a stay of removal pending the resolution of that review. *Id.* ¶¶ 46-49. Both actions are presently stayed pending the disposition of related cases. *Id.* ¶ 52.

Petitioner also alleges that his conditions of confinement are and have been abhorrent. ECF No. 1 ¶ 61. From 2023 to 2025, he was detained at the Golden State Annex Detention Facility, where he was denied adequate medical care for a shoulder injury during that time, and was subject to unhygienic, unsafe, and carceral living conditions. *Id.* ¶¶ 58-59. In August 2025,

---

[1] Neither the Immigration Judge's bond decision nor the BIA decision upholding it are part of the record before the court. *See* ECF Nos. 1, 7, 8, 10.

he was transferred to the California City Detention Center, whose conditions of confinement have been described as "inhumane . . . violating basic standards for access to health care, food, water, and legal counsel," by United States Senator Alex Padilla, Ranking Member of the Senate Judiciary Immigration Subcommittee, upon his January 2026 oversight visit to the facility. *Id.* ¶ 62 & Ex. E. The facility lacks basic medical resources, thereby "endangering detainees," per a December 2025 letter from California Attorney General Rob Bonta to respondent Kristi Noem. *Id.* ¶ 63 & Ex. D at 4. The conditions to which petitioner is subject at California City Detention Center are carceral: petitioner is confined to a cell for multiple hours per day, is provided outdoor time only one hour per day, is subject to solitary confinement for minor infractions, and has no access to any form of programming. *Id.* ¶¶ 68-69. In February 2026, United States District Court Judge Maxime Chesney issued a partial preliminary injunction against respondents, ordering that they provide detainees at the California City Detention Center with adequate access to health care, legal representation, and basic necessities, and certified a class of detained plaintiffs.[2] *Id.* ¶ 64. Notwithstanding this, at the time of the filing of the instant petition, petitioner still had not undergone the shoulder surgery that a doctor had ordered in August 2025. *Id.* ¶ 65. His pain and mobility have worsened as a result, rendering him "practically immobile" and exacerbating his preexisting anxiety and depression. *Id.* ¶¶ 63-67.

In their return to the petition, respondents do not dispute petitioner's factual allegations. *See* ECF No. 7 at 2-3.

**B. Procedural Background**

Petitioner initiated this action on March 11, 2026. ECF No. 1. Respondents filed a return on March 26, 2026, ECF Nos. 7-8, and filed a motion to dismiss on the same day. ECF No. 9. On March 30, 2026, petitioner filed a response to the return. ECF No. 10. On July 1, 2025, petitioner filed a statement of supplemental authorities. ECF No. 14.

////

////

---

[2] Respondents appealed this order and that appeal remains pending. *See Gomez Ruiz, et al. v. United States Immigration and Customs Enforcement, et al.*, No. 26-2302 (9th Cir.).

**C. Motion to Dismiss**

Respondents move to dismiss all respondents aside from petitioner's immediate custodian at the detention facility where he is currently housed. ECF No. 9. Petitioner has filed no opposition, and the undersigned recommends the motion be granted.

"[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The Court of Appeals has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees," which "require[e] core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition." *Doe v. Garland*, 109 F.4th 1188, 1197, 1199 (9th Cir. 2024). In contrast, where the "habeas petitioner challenges a form of 'custody' other than present physical confinement, the respondent can be the entity or person who exercises legal control with respect to the challenged 'custody.'" *Id.* at 1192 n.2

Here, petitioner's petition for writ of habeas corpus is a "core habeas petition," *Doe*, 109 F.4th at 1194, because petitioner only challenges his present confinement and only seeks as a remedy his immediate release. *Id*. at 1193-94; *see* ECF No. 1. Under *Padilla*, therefore, the sole proper respondent is the warden of the facility where petitioner is presently detained, i.e., Christopher Chestnut, Warden of the California City Detention Facility. *See Padilla*, 542 U.S. at 435; *Doe v. Garland*, 109 F.4th at 1191-94. Accordingly, the undersigned recommends respondents' motion be granted and respondents Sergio Albarran, Todd M. Lyons, Kristi Noem, and Pamela Bondi be dismissed from this action.

## LEGAL STANDARD

The federal court should grant a writ of habeas corpus under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or federal law. *See, e.g., Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018). The petitioner bears the burden to prove the

unlawfulness of his detention by a preponderance of evidence. *See, e.g.*, *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025).

**DISCUSSION**

In his petition, petitioner asserts two claims for relief. In Claim One, he alleges that his current confinement violates his rights to substantive due process under the Fifth Amendment. ECF No. 1 ¶¶ 149-55. In Claim Two, he alleges that his prolonged confinement violates his rights to procedural due process under the Fifth Amendment and violates 8 U.S.C. § 1231(a)(6). *Id*. ¶¶ 156-58. As relief, he requests a declaratory judgment; that the court immediately release him under appropriate conditions; and attorney fees and costs. *Id*. at 39.

In their return, respondents argue that petitioner's current detention is proper under 8 U.S.C. § 1231(a)(6), and does not violate petitioner's due process rights. ECF No. 7. Upon consideration of the arguments of the parties, the undersigned finds petitioner has demonstrated his entitlement to habeas corpus relief, recommends the writ be granted, and recommends respondents be ordered to release petitioner immediately.

**1. Claim One: Violation of Petitioner's Substantive Due Process Rights**

In his first claim for relief, petitioner alleges that his current confinement violates his rights to substantive due process due to the lengthy, punitive nature of his confinement, which exceeds the government's interest in his detention. ECF No. 1 ¶¶ 149-55.

The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Where a person is detained by the government, the Supreme Court has held that, at a minimum, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Thus, when a noncitizen is detained pending removal, that detention only comports with the requirements of substantive due process where the detention is nonpunitive in both "purpose and effect." *Zadvydas*, 533 U.S. at 690; *see also Wong Wing v. United States*, 163 U.S. 228 (1896) (holding

that immigration detention violates the detainee's substantive due process rights when the Government effectuates it in a manner designed to punish or that has punitive effect); *Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1177-83 (E.D. Cal. 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *cf. United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (holding a criminal pretrial detainee suffers a "[substantive] due process violation . . . when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose").

The Supreme Court has not held that any particular test should be employed to determine whether immigration detention violates the substantive due process rights of the detainee, and courts considering the question are typically guided by the totality of factual circumstances in the case before it. *See Torres*, 995 F.3d at 708. In *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024), the court utilized a multi-factor test that petitioner urges the court to use here, *see* ECF No. 1 ¶¶ 85-90, and which other courts have adopted, as well. *See*, *e.g.*, *Doe*, 810 F. Supp. at 1177-83; *Ruiz v. Chestnut, et al.*, No. 1:26-CV-01700 DJC SCR, 2026 WL 2031810, at *5 (E.D. Cal. July 14, 2026); *Campos v. Chestnut, et al.*, No. 1:26-CV-01330 DJC SCR, 2026 WL 1816190, at *8-12 (E.D. Cal. June 24, 2026), *report and recommendation adopted*, No. 1:26-CV-01330 DJC SCR, 2026 WL 1899541 (E.D. Cal. July 1, 2026); *but see Shafaq v. Warden, California City Correctional Facility, et al.*, No. 1:26-CV-00299 JLT SKO, 2026 WL 1785249, at *6 (E.D. Cal. June 22, 2026) (adopting a modified version of the test); *Espinoza v. Wofford*, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *10 (E.D. Cal. June 2, 2025), *dismissed sub nom. Espinoza v. Becerra*, No. 25-4147, 2026 WL 1008510 (9th Cir. Mar. 10, 2026) (same). Respondents raise no opposition to the application of the *Doe* factors to petitioner's claim. *See* ECF No. 7. As the test simply summarizes the types of concerns the Supreme Court and Court of Appeals have considered in evaluating similar claims, *see Doe v. Becerra*, 723 F. Supp. 3d 688, 690-92 (N.D. Cal. 2024), the undersigned finds it an apt approach to the relevant analysis. As discussed below, given the totality of the factual circumstances here, as derived from the uncontested factual allegations of petitioner's verified petition, petitioner has shown that his

current confinement violates his substantive due process rights.

**A. Length of Detention**

The courts have long recognized that a substantive due process violation occurs where the length of the detainee's detention is excessive relative to its purpose. *Torres*, 995 F.3d at 708 (collecting cases). Thus, the longer the period of detention, the more likely it will be that the detainee's due process rights have been violated. *Id*.; *Doe*, 732 F. Supp. 3d at 1083. In *Torres*, the Court of Appeals held that a criminal pretrial detainee's twenty-one-month period of detention weighed in favor of finding a due process violation. *Torres*, 995 F.3d at 708; *see also id*. at 699 (finding this duration "likely approach[ed] the outer bounds of due process"). In cases of immigration detention, court have held that detention periods of seven months, *Chen v. Aitken*, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013); twelve months, *Campos*, 2026 WL 1816190, at *8-12; thirty months, *Doe*, 732 F. Supp. 3d at 1083; and fifty-four months, *Doe*, 810 F. Supp. 3d at 1184, were all so lengthy as to militate towards a finding that the detainee's substantive due process rights were violated.

Here, the undisputed record is that petitioner presently has been detained for over thirty-seven months, since May 23, 2023. ECF No. 1 ¶¶ 30, 31; ECF No. 7 at 2 & Ex. 5 at 3. This reflects more than a year beyond the duration at issue in *Torres*, where the petitioner's twenty-one month detention was so lengthy as to "approach[] the limits of what due process can tolerate," per the Court of Appeals. *Torres*, 995 F.3d at 709. On comparable facts, courts have found a similar period of detention to be "extraordinary," militating strongly towards a finding that the detainee's substantive due process rights have been violated. *See Doe*, 732 F. Supp. 3d at 1083 ("Thirty months is an extraordinary amount of time to spend in civil detention, including immigration detention. ICE's own statistics suggest exactly as much. This duration alone suggests a potential due process violation."); *see also United States v. El-Hage*, 213 F.3d 74, 76, 80 (2d Cir. 2000) (holding that the "30-33 months of pretrial detention served or contemplated to be served before the conclusion of a trial in this case is extraordinary" and "weighs heavily in [petitioner's] favor in his argument that his due process rights have been violated"). In petitioner's case, the exceptional duration of his present detention strongly weighs in favor of finding that his

substantive due process rights have been violated.

**B. Government's Contribution to the Delay**

In addition to the length of detention, a court must also consider the reasons for the length of detention and to what extent the delay has been attributable to the actions of the Government, petitioner, or an external factor. *Torres*, 995 F.3d at 708-09; *Doe*, 810 F. Supp. 3d at 1184-85; *Doe*, 732 F. Supp. 3d at 1083; *see also United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988). Here, the duration of petitioner's detention is attributable, in part, actions by the Government. The undisputed record before the court indicates that, after taking evidence on petitioner's Convention Against Torture claim, the Immigration Judge took seven months to render a decision, during which time petitioner remained detained. ECF No. 1 ¶¶ 38, 44; ECF No. 9, Ex. 11 at 57-58. The undisputed record also indicates that, after receiving an adverse decision, petitioner sought review in the Court of Appeals approximately one year ago, and that proceeding remains pending. ECF No. 1 ¶¶ 47-52; ECF No. 9 at 2. Respondent does not dispute petitioner's allegations that, based on available data, it is reasonable to expect that the Court of Appeals will not render a decision for several additional months. ECF No. 1 ¶¶ 52-53; ECF No. 9.

To be sure, the Government is not wholly responsible for the delays in petitioner's removal case. Petitioner himself requested multiple continuances in this case, which were granted. ECF No. 1 ¶ 36; ECF No. 8, Ex. 9. Some of the delays petitioner has experienced reflect, simply, that petitioner has availed himself of review processes to which he is legally entitled, which take time to resolve. *See* ECF No. 1 ¶¶ 32, 33, 45-52. Finally, multiple months of delay were caused by the Immigration Judge inquiring into petitioner's competency, based on evidence of petitioner's mental disorder, including ordering petitioner to undergo a competency examination.[3] ECF No. 1 ¶¶ 34-35. In toto, this factor neither supports nor weakens petitioner's argument that the duration of his detention has become so excessive as to violate his substantive due process rights. *See Doe*, 810 F. Supp. 3d at 1184-85; *Doe*, 732 F. Supp. 3d at 1083.

---

[3] Petitioner was ultimately found competent. ECF No. 1 ¶ 36.

### C. Regulatory Purpose of Detention

Whether the length of a detainee's detention has become excessive, as a matter of due process, depends on the Government's purpose for the detention. The length and nature of a detainee's detention must "bear some reasonable relation to" the regulatory purpose for the detention. *Jackson*, 406 U.S. at 738; *see also United States v. Salerno*, 481 U.S. 739, 747-48 & n.4 (1987) (recognizing that a detention period that is "excessively prolonged. . . in relation to Congress' regulatory goal" would violate the detainee's substantive due process rights); *Torres*, 995 F.3d at 708 ("A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose."). The Supreme Court has held that Congress identified two regulatory purposes for the detention of noncitizens under 8 U.S.C. § 1231(a)(6): ensuring the noncitizen's appearance at future immigration proceedings and protecting the community. *Zadvydas*, 533 U.S. at 690; *see also Demore v. Kim*, 538 U.S. 510, 528 (2003); *see* ECF No. 1 ¶ 145 (representing that petitioner is currently detained under § 1231(a)(6)); ECF No. 7 at 3-6 (same).

In determining whether an alien's release would endanger the community, so as to justify detention under § 1226(a), the Immigration Judge should consider the detainee's entire "criminal record, including the extensiveness of criminal activity, the recency of such activity," in addition to the seriousness of the offenses for which he has been charged or convicted. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing same); *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) (same), *overruled on other grounds by Rodriguez Diaz*, 53 F.4th at 1196. Consequently, the alien's "criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness," but rather the Immigration Judge must consider the totality of factual circumstances probative to the alien's present dangerousness. *Singh*, 638 F.3d at 1206. Thus, the Court of Appeal has opined, where the alien's "conviction . . . occurred years ago, and the alien [has] led an entirely law-abiding life since then[,] . . . denial of bond on the basis of criminal history alone may not be warranted." *Id*.

Here, respondents argue that petitioner's substantive due process rights have not been violated because "the Government has a strong interest in detaining Petitioner, a violent felon." ECF No. 7 at 7. In essence, respondents rely solely on the fact of petitioner's murder conviction as evidence that his ongoing, prolonged detention is justified in order to protect the community.[4] The fact of petitioner having suffered convictions for violent felonies, while certainly probative, is not sufficient to demonstrate petitioner's present dangerousness under § 1226(a), however. *See Rodriguez Diaz*, 53 F.4th at 1197; *Singh*, 638 F.3d at 1206. Here, the record demonstrates that, despite petitioner having been convicted of violent felonies, those crimes occurred decades ago and he has completed his sentences for them. The sentencing court did not impose a life sentence but rather one that contemplated eventual release upon completion of the sentence. The uncontested record is that, since having accrued those convictions, petitioner has rehabilitated, leading the California Board of Parole Hearings to find him suitable for parole in 2022. ECF No. 1 ¶¶ 28-29, 133-34 & Ex. G. Petitioner has presented evidence that the Board rarely errs in its determinations that parole is appropriate for a particular incarcerated person, with the recidivism rate of less than two percent for those persons released on parole through the Parole Board process, ECF No. 1 ¶ 134 & Ex. H at 26; *see also id.* ¶ 133 & Ex. G at 11, and that, in petitioner's case, the Board found not only that petitioner was suitable for parole, but that he evinced a lower risk for recidivistic violence than even other parolees. ECF No. 1 ¶ 133 & Ex. G at 12. In light of the totality of the uncontested record, respondents fail to show that petitioner presently poses a danger to the community, within the meaning of § 1226(a). *See Singh*, 638 F.3d at 1206. This factor, therefore, favors the finding of a substantive due process violation. *See, e.g.*, *Singh*, 638 F.3d at 1206; *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999), *amended* (Dec. 30, 1999); *Doe*, 810 F. Supp. 3d at 1197; *Doe*, 732 F. Supp. 3d at 1084-87.

////

////

---

[4] Respondents do not rely on any of the reasons the Immigration Judge cited in denying petitioner bond in November 2023, nor any reasoning provided by the BIA in upholding that decision, and, as noted *ante*, those decisions are not part of the record before the court.

**D. Alternatives to Detention**

Whether government detention violates the detainee's substantive due process rights also relies on consideration of whether there exist less restrictive alternatives to detention through which the respondents' regulatory objectives could be met. *See Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1484 (9th Cir. 1993); *Doe*, 723 F. Supp. 3d at 692. Here, petitioner alleges that respondents could utilize their extant Alternatives to Detention (ATD) programs to achieve their regulatory objective of ensuring petitioner's attendance at future hearings. ECF No. 1 ¶ 141. Placement of petitioner in an ATD program, particularly when coupled with his parole requirements, would minimize his likelihood of acting in a manner dangerous to the community. *Id.* ¶¶ 140-42. Respondents do not dispute either point. *See* ECF No. 7. Petitioner has therefore shown that this factor weighs in favor of finding that his present detention is excessive as a matter of substantive due process.

**E. Conditions of Confinement**

Where civil detention conditions resemble those of criminal incarceration, the detention violates the detainee's rights to substantive due process. *Jones*, 393 F.3d at 932. Here, petitioner alleges that he has experienced carceral conditions at both detention centers where he has been housed, which respondents do not refute. ECF No. 1 ¶¶ 58-69; *see* ECF No. 7. In his present detention at California City Detention Facility, he is confined to a cell for multiple hours a day, may only access the outdoors for one hour per day, and has no access to any programming. ECF No. 1 ¶ 69. As another judge in this district has observed, the limitations on detainees' liberty at the California City Detention Facility not only resemble those of a prison, but in fact are even more restrictive than those to which California criminal inmates are subject. *See Doe*, 810 F. Supp. 3d at 1201. These restrictions are coupled with the poor living conditions within the prison and the dearth of necessary resources, including adequate medical care. *See* ECF No. 1 ¶¶ 58-66, 113-25; *see also Tigranyan v. Warden of California City Det.*, No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026) (noting investigation and report by Disability Rights California finding that California City fails to provide necessary medical and mental health care and fails to other meet basic needs), *report and recommendation adopted*, No. 1:25-CV-

01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026). Petitioner has presented evidence that these poor conditions have impacted him specifically. Per the unrefuted evidence before the court, he has waited since August 2025 for shoulder surgery that a doctor ordered as medically necessary and, as a result of the delay in treatment, he has become "practically immobile" and lives in persistent pain. ECF No. 1 ¶¶ 63-67. Petitioner declares that he has observed the detention center to be in a "horrible" state of filth and often lack basic hygiene necessities, like soap. ECF No 1, Ex. B ¶ 38. He describes that, "[t]he water comes out dirty and hurts my stomach when I drink it." *Id.* Per petitioner, respondents have deprived him of sleep by leaving lights on all night; have provided him inadequate food; and have failed to provide him adequately warm clothing. ECF No. 1 ¶ 124 & Ex. B ¶ 36. He describes having observed guards behaving threateningly to other detainees, creating an atmosphere of fear. ECF No. 1 ¶ 5 & Ex. B ¶ 37. These conditions are worse than what petitioner experienced in any California prison. ECF No. 1 ¶ 5 & Ex. B ¶ 36. Respondents do not dispute any of these factual allegations, *see* ECF No. 7, and petitioner's personal observations accord with those of lawmakers and third-party observers. *See* ECF No. 1 ¶¶ 61-64, 114-18 & Exs. D, E, F. As a whole, petitioner has demonstrated that the conditions of confinement to which he is subject at least resemble—and in many ways, are even worse than—those conditions experienced by persons convicted of crimes, militating towards a finding that his detention is for all practical purposes punitive in its effect.

**F. Conclusion**

On balance, petitioner has established that his detention is excessive relative to its regulatory purpose. Petitioner has now spent thirty-seven months in immigration detention while his removal proceedings continue. Although the Government undoubtedly has an interest in protecting the community from violent persons, respondents' failure to challenge or even note any evidence of petitioner's rehabilitation since 1998 undermines their argument that he is currently detained because he is currently dangerous. The conditions of petitioner's detention are even more restrictive than those of a California prison, and the medical care and living conditions to which petitioner has personally been subject are aptly described as inhumane. *See* ECF No. 1 ¶ 62 & Ex. E (statement of United States Senator Alex Padilla). Respondents have a robust

Alternatives to Detention program, through which petitioner could be supervised if released, and his conduct if released would be additionally circumscribed by the conditions of and oversight intrinsic to his criminal parole. In light of all of these facts, petitioner has demonstrated that his present detention is excessive, so as to constitute a violation of his rights to substantive due process under the Fifth Amendment. The undersigned therefore recommends relief be granted on Claim One of the petition and petitioner be ordered to be released.

**2. Claim Two: Violation of Petitioner's Procedural Due Process Rights and the Immigration and Nationality Act**

In his second claim for relief, petitioner alleges that because his removal is not reasonably foreseeable, his detention violates the Immigration and Nationality Act (INA) and his rights to procedural due process under the Fifth Amendment. ECF No. 1 ¶¶ 156-58; ECF No. 10 at 8-10. Respondents argue that petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6) and his present confinement does not violate his procedural due process rights. ECF No. 7 at 3-8. The undersigned finds that petitioner has shown that his procedural due process rights have been violated and recommends that the petition be granted on this alternative ground.

**A. Statutory and Constitutional Framework**

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." *Id*. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Id*. at 578-79 (quoting 8 U.SC. § 1231(a)(6)).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not

be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (citing *Zadvydas*, 533 U.S. at 684-86). Recognizing that a statute that permitted indefinite civil detention would run afoul of the Due Process Clause of the Fifth Amendment, the Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Rather,

> [a]fter [a presumptively reasonable] 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

Here, the parties agree that petitioner is presently detained under 8 U.S.C. § 1231(a)(6). ECF No. 1 ¶¶ 145-47; ECF No. 7 at 3-6. Petitioner's removal order became final on May 24, 2023, when the Department of Homeland Security issued a notice of intent to reinstate his prior removal order. ECF No. 1 ¶ 31; *see Riley v. Bondi*, 606 U.S. 259, 267-69 (2025); *Johnson v. Guzman Chavez*, 594 U.S. 523, 533-40 (2021); *Navarrete v. Bondi*, 170 F.4th 1214, 1221 (9th Cir. 2026). Thus, his 90-day mandatory detention period under § 1231(a)(2)(A) expired on August 22, 2023, and the presumptively reasonable six-month period of detention described in *Zadvydas* expired on November 24, 2023. *See Khotesouvan v. Morones*, 386 F.3d 1298, 1300 (9th Cir. 2004) (explaining that the six-month period identified in *Zadvydas* includes the 90-day period described in 8 U.S.C. § 1231(a)(2)(A)); *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1100 (9th Cir. 2001) (same).

////

Petitioner has shown that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. Petitioner's unrefuted allegations are that respondents have been unable to remove him since his order of removal became final in May 2023. ECF No. 1 ¶¶ 146-47; *see* ECF No. 7 at 3-6. Respondents' lack of acquisition of any travel documents for petitioner in more than three years since his removal order became final suffices to show "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, such that petitioner has met his burden. *See*, *e.g.*, *Shahvaladian v. Mullin, et al*, No. 5:25-CV-03001-SPG-AJR, 2026 WL 1700477, at *4 (C.D. Cal. June 8, 2026) (collecting cases and observing, "[m]any courts have found that removal was not reasonably foreseeable where the Government has been unable to obtain travel documents"); *Galo Chavez v. Acting Warden of The Adelanto Detention Center*, No. 5:26-CV-02315-SP, 2026 WL 1601896, at *4 (C.D. Cal. June 1, 2026) (holding petitioner met burden where travel documents had not been acquired during her ten months of detention).

Moreover, petitioner's withholding of removal proceedings are currently pending, with petitioner having been granted withholding of removal in June 2023. ECF No. 1 ¶¶ 33, 146; *see also* ECF No. 7 at 3-6. This, too, supports a finding that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Rodriguez v. Warden, Golden State Annex Det. Facility*, No. 1:26-CV-00694-DAD-CKD, 2026 WL 770527, at *3 (E.D. Cal. Mar. 18, 2026) ("A pending application in which a petitioner has requested withholding of removal supports a finding that there is not a significant likelihood of removal in the reasonably foreseeable future."). Where withholding of removal has been granted, there are typically two potential outcomes: either respondents identify a third country to which they seek to remove petitioner and then obtain travel documents for petitioner for same, or the withholding order is appealed to the BIA. *See*, *e.g.*, *A.A.M. v. Andrews*, No. 1:25-CV-01514-DC-DMC (HC), 2026 WL 1099063, at *7 (E.D. Cal. Apr. 21, 2026), *report and recommendation adopted,* No. 1:25-CV-01514-DC-DMC (HC), 2026 WL 1266280 (E.D. Cal. May 8, 2026). Here, the record does not indicate, nor do respondents argue, that any third country has been identified for petitioner's removal nor that respondents

have made any efforts to acquire travel documents for petitioner's removal to that country. *See* ECF No. 7. As noted, however, petitioner's petition for review of the adverse BIA decision in petitioner's withholding-only proceedings is now pending in the Court of Appeals and petitioner argues that such proceedings may take months or years to resolve, ECF No. 1 ¶¶ 4, 52-54, 147; ECF No. at 8-9, which respondent does not refute. ECF No. 7. Judges of the Court of Appeals has acknowledged that, at present, multi-year delays in its adjudication of immigration cases are "hardly unique." *Santana-Gonzalez v. Bondi*, 172 F.4th 736, 745 (9th Cir. 2026) (VanDyke, J., and Tung, J., concurring). For these additional reasons, petitioner has shown that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701.

Respondents have not rebutted petitioner's showing. *See Zadvydas*, 533 U.S. at 701. Respondents have not argued that DHS has taken any steps to effectuate petitioner's removal whatsoever, nor that they took any steps to do during the 90-day statutory removal period. *See* ECF No. 7. As such, respondents have not met their burden to rebut petitioner's showing. *See, e.g.*, *Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.D.C. 2002) (holding Government had not rebutted petitioner's showing where Government had not secured travel documents for the petitioner); *M.A., v. Noem*, No. 1:26-CV-03432-MWJS, 2026 WL 1709179, at *2 (E.D. Cal. June 12, 2026) (finding Government had not met its rebuttal burden where it had submitted a travel document request seven months prior, which had received no answer and which the Government "continue[d] to follow up on" during that time); *Shahvaladian*, 2026 WL 1700477, at *4 (finding Government had not rebutted petitioner's showing where Government had not secured travel documents nor indicated any other efforts to remove petitioner); *Andemicael v. Noem*, No. 5:25-CV-02999-KK-MBK, 2026 WL 734522, at *8 (C.D. Cal. Feb. 12, 2026), *report and recommendation adopted*, No. 5:25-CV-02999-KK-MBK, 2026 WL 734588 (C.D. Cal. Feb. 20, 2026) (finding the Government failed to meet its rebuttal burden, where its request for travel documents was still pending).

////

////

**3. Violation of Petitioner's Right to Due Process**

Having demonstrated that his present detention is not authorized under the construction of 8 U.S.C. § 1231(a)(6) articulated in *Zadvydas*, petitioner further argues that his present detention violates his rights to due process under the Fifth Amendment. ECF No. 1 ¶¶ 156-58. In *Garland v. Aleman Gonzalez*, 596 U.S. 543, 581 (2022), the Supreme Court held that, as a matter of statutory construction, 8 U.S.C. § 1231(a)(6) cannot be read to require the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community. The Court, however, left open the possibility that, in an individual case, due process may require such a bond hearing. *See Arteaga-Martinez*, 596 U.S. at 583; *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022); *see also Espinoza v. Wofford*, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *3-5 (E.D. Cal. June 2, 2025). Here, petitioner has shown that his present detention violates his rights to procedural due process under the Fifth Amendment.

The Court of Appeals has applied the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to claims that immigration detention violates the detainee's rights to procedural due process under the Fifth Amendment. *See Rodriguez Diaz*, 53 F.4th at 1206-07. Under *Mathews*, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. *Mathews*, 424 U.S. at 335.

**A. Private Interest**

Petitioner has a substantial private interest in his personal liberty. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. In *Rodriguez Diaz*, 53 F.4th at 1207, the Court of Appeals considered a similar claim by an immigration detainee who had been detained for sixteen months at the time of the district court's decision, with only a single bond hearing that had been held two months into his detention, i.e., fourteen months prior to the

district court's decision. The Court of Appeals held that his fourteen-month detention was "prolonged," within the meaning of *Demore* and *Zadvydas*, and that, despite his having been granted one bond hearing, he nevertheless maintained "a legitimate and reasonably strong private liberty interest under *Mathews*." *Rodriguez Diaz*, 53 F.4th at 1207. This interest was slightly lessened by the fact that some of the delay to which petitioner had been subject resulted from his decisions to pursue challenges in the BIA and Court of Appeals to the Immigration Judge's removal decision, and that he could have requested additional bond hearings while he was detained, given that his detention was governed by 8 U.S.C. § 1226(a) and its implementing regulations. *Id*. at 1207-08. Nonetheless, the Court held, the petitioner retained a "substantial" interest in his liberty, for the purposes of the *Mathews* analysis. *Id*. at 1213.

Pursuant to this authority, petitioner has demonstrated he has a substantial interest in his freedom from detention. At present, petitioner has been detained for over thirty-one months since his last, and only, bond hearing. ECF No. 1 ¶ 55. This period is more than double that which the court in *Rodriguez Diaz* concluded was "prolonged" for the purposes of a due process analysis. *Rodriguez Diaz*, 53 F.4th at 1207. As in *Rodriguez Diaz*, 53 F.4th 1189, however, petitioner's liberty interest is somewhat attenuated by petitioner having sought review of agency decisions and thus, in some sense having contributed to the delay, and the fact that the governing regulations provide opportunities for an additional bond hearings upon petitioner's showing of changed circumstances. *Rodriguez Diaz*, 53 F.4th at 1207; *see* 8 C.F.R. § 241.14(k)(2). At the same time, petitioner has demonstrated that his prolonged detention has caused him physical and mental decompensation due to the poor conditions of confinement to which he is subject, which strengthens his liberty interest. *See Tigranyan v. Warden of California City Det.*, No. 1:25-cv-1554 DJC SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026), *report and recommendation adopted*, No. 1:25-cv-1554 DJC SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026). On sum, and consistent with the Court of Appeals' holding in *Rodriguez Diaz*, 53 F.4th 1189, petitioner has demonstrated that he possesses a substantial interest in freedom from detention.

////

////

**B. Risk of Erroneous Deprivation**

Under the second *Mathews* factor, the court considers "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. "Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (citing *Zadvydas*, 533 U.S. at 690-91); *see also D.L.C. v. Wofford*, No. 1:25-CV-01996-DC-JDP (HC), 2026 WL 25511, at *5 (E.D. Cal. Jan. 5, 2026) ("Civil immigration detention is 'nonpunitive in purpose and effect' and is justified when a noncitizen presents as a danger to the community or risk of flight.") (citing *Zadvydas*, 533 U.S. at 690).

Here, the risk of erroneous deprivation is high without an additional bond hearing. As detailed *ante*, the November 2023 bond denial and the BIA's order upholding it are not in the record before the court and respondents do not rely on their reasoning, whatever it may have been, to justify petitioner's ongoing detention, but rather rely merely on the fact of petitioner having suffered a first-degree murder conviction almost thirty years ago. ECF No. 7 at 7-8. As explained *ante*, this fact provides little illumination of petitioner's present dangerousness and thus creates a significant risk that petitioner's liberty is being deprived on the basis of stale concerns. This risk is all the more real in this particular case, where petitioner has presented ample, compelling evidence of his personal rehabilitation, which the State of California found not only so persuasive as to justify petitioner's release on parole, but led the Board of Parole Hearings' forensic assessors to conclude that petitioner has even less of a risk of reoffending than other parolees. ECF No. 1, Ex. G, Tab A at 11-12. In light of this, the risk that petitioner's detention is legally erroneous is high, militating towards a finding that additional hearings are required as a matter of due process.

**C. Government Interest**

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement

would entail." *Mathews*, 424 U.S. at 335. Court have recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore*, 538 U.S. at 515). This interest, however, is mitigated by the low fiscal and administrative burdens associated with a bond hearing. *See Doe*, 787 F. Supp. 3d at 1094. Here, as with the previous factor, although respondents note that petitioner has suffered criminal convictions, there is countervailing evidence that he nonetheless does not represent a current danger to the community. Should respondents seek petitioner's ongoing detention the basis that his release would threaten the community, the Government's interest may be properly considered in a hearing before an Immigration Judge. *See, e.g.*, *id*. ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government.").

Accordingly, the court finds that respondents' interest in detaining petitioner without an individualized bond determination, at a hearing before an Immigration Judge, is low and does not outweigh petitioner's substantial liberty interest or the risk of the erroneous deprivation of same. Petitioner has thereby shown by a preponderance of evidence that his present detention is unauthorized under 8 U.S.C. § 1231(a)(6), as construed by *Zadvydas*, and violates his rights to procedural due process under the Fifth Amendment, entitling him to relief on the second claim of his petition.

**3. Remedy**

As a remedy, petitioner requests that he be immediately released under appropriate conditions, although does not suggest what those conditions should be. ECF No. 1 at 41. Respondents express no opinion on the appropriate remedy. *See* ECF No. 7. Where a detainee's substantial due process rights have been violated, courts have found that immediate release with appropriate conditions is the appropriate remedy. *See*, *e.g.*, *Doe*, 810 F. Supp. 3d at 1202; *Ruiz*, 2026 WL 2031810, at *8; *Grigoryan v. Andrews, et al.*, No. 1:26-CV-03305 TLN SCR, 2026 WL 1983929, at *8 (E.D. Cal. July 9, 2026); *Campos*, 2026 WL 1816190, at *12. In light of the Government's interest in protecting the community from potential danger and given petitioner's criminal history, including his conviction for first-degree murder, the undersigned recommends that the parties be ordered to file statements proposing the conditions of his supervised release.

*See Doe*, 810 F. Supp. 3d at 1202.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1) Respondents' motion to dismiss (ECF No. 9) be GRANTED, and respondents Sergio Albarran, Pamela Bondi, Todd M. Lyons, and Kristi Noem be dismissed from this action;

2) Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED, as follows:

   a. Respondents be ORDERED to release Petitioner, Jose Saturnino Velasquez Mejia (A-071-953-238) immediately; and

   b. Respondents may place Petitioner on standard conditions of supervision upon release.

3) Petitioner's request for attorney fees and costs be denied without prejudice to bringing a properly noticed and supported motion;

4) The Clerk of Court be directed to serve the District Court's order on the California City Detention Facility; and

5) Judgment be entered in favor of petitioner and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven (7) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 3, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE